UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EVLIN GAPPY,

              Plaintiff,                     CIVIL ACTION NO. 10-12737

           v.                        DISTRICT JUDGE SEAN F. COX

COMMISSIONER OF               MAGISTRATE JUDGE MARK A. RANDON
SOCIAL SECURITY,

              Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

I.     **PROCEDURAL HISTORY**

     *A.     Proceedings in this Court*

     On July 12, 2010, Plaintiff filed the instant suit seeking judicial review of the

Commissioner's decision disallowing benefits (Dkt. No. 1). Pursuant to 28 U.S.C. §

636(b)(1)(B) and Local Rule 72.1(b)(3), this matter was referred to the undersigned for the

purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of

Disability Insurance and Supplemental Security Income benefits (Dkt. No. 3). This matter is

currently before the Court on cross-motions for summary judgment (Dkt. Nos. 8, 13).

     *B.     Administrative Proceedings*

     Plaintiff filed the instant claims on October 6, 2005, alleging that she became unable to

work on July 22, 2005 (Tr. 17, 66-73). The claim was initially disapproved by the Commissioner

on February 10, 2006 (Tr. 17, 48-51). Plaintiff requested a hearing and on August 12, 2008,

Plaintiff appeared with counsel before Administrative Law Judge (ALJ) George Gaffaney, who

considered the case *de novo*.  In a decision dated September 2, 2008, the ALJ found that Plaintiff was not disabled (Tr. 14-25).  Plaintiff requested a review of this decision on September 8, 2008 (Tr. 12-13).  The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits[1] (AC-1-10, Tr. 7-8), the Appeals Council, on May 17, 2010, denied Plaintiff's request for review (Tr. 4-8).

In light of the entire record in this case, I find that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled.  Accordingly, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and that the findings and conclusions of the Commissioner be **AFFIRMED**.

## II.   STATEMENT OF FACTS

### A.   *ALJ Findings*

Plaintiff was 51 years old on her alleged disability onset date (Tr. 23).  Plaintiff has past relevant work as a meat wrapper (Tr. 23).  The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since July 22, 2005 (Tr. 19).  At step two, the ALJ found that Plaintiff had the following "severe" impairments: degenerative arthritis of the lumbar spine, and gastroesophageal reflux disease.  *Id*.  At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations (Tr. 21).

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ.  In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity (RFC) to perform "light work...except with lifting 20 pounds occasionally and 10 pounds frequently; standing and walking for up to six hours of an eight hour day; sitting for up to six hours of an eight hour day; with only occasional balancing, stooping, kneeling, crouching, crawling and climbing of ladders and stairs; and only occasional exposure to extreme cold" (Tr. 21). At step four, the ALJ found that Plaintiff could not perform her previous work as a meat wrapper, which is unskilled medium work (Tr. 23). At step five, the ALJ denied Plaintiff benefits, because the ALJ found that Plaintiff could perform a significant number of jobs available in the national economy, such as small parts assembler (12,500 jobs in Southeast Michigan) and hand packager (15,000 jobs in Southeast Michigan) (Tr. 24).

**B.    *Administrative Record***

**1.    Plaintiff's Testimony & Statements**

Plaintiff was born in June 1954 (Tr. 66). She alleged disability in 2005 due to arthritis in her back and numbness in her hands (Tr. 74). She complained that her pain radiated to her leg and arms (Tr. 75).

At the hearing, Plaintiff testified that she had pain in her back, right elbow, hands, legs/knee, shoulders, arms, and neck (Tr. 358-59, 367-69). Plaintiff stated that she had arthritis, for which she took Motrin (Tr. 364). Plaintiff claimed that pain medication alleviated, but did not eliminate, her pain (Tr. 366) and that cold weather increased her pain (Tr. 371-72). Plaintiff also stated that she took medication for high blood pressure and cholesterol (Tr. 364, 371).

Plaintiff testified that she last worked as a meat wrapper but quit that job because her hand would become numb and her back hurt (Tr. 363). Plaintiff stated that she did not look for

any other job because of her numbness and pain (Tr. 364). Plaintiff stated that she had to lie

down one hour each day, in the afternoon (Tr. 367).

>   **2.   Medical Evidence**

In 2005, Plaintiff complained to Dr. Nancy Mansour-Habib, a treating physician, of acid

reflux and breathing problems (Tr. 166). Plaintiff also complained of back pain and neck pain

(Tr. 153, 168-69). Dr. Mansour-Habib prescribed Motrin for Plaintiff's pain (Tr. 169). Despite

Plaintiff's complaints, her doctor noted in September 2005 that Plaintiff had no difficulty

bending to pick up her purse off the ground (Tr. 154). An MRI of her lumbosacral spine taken

that same month revealed no herniated disc and no disc space narrowing, but indicated a

hemangioma at the L4 vertebra (Tr. 158).

Dr. F. Qadir performed a consultative examination in January 2006 (Tr. 170-72).

Although Dr. Qadir is a psychiatrist, he noted Plaintiff's posture and gait were normal (Tr. 171).

Plaintiff told Dr. Qadir that she attended church and did light household chores (Tr. 171).

Dr. R. Patel performed a physical consultative examination the same day (Tr. 174-80).

Dr. Patel noted that while Plaintiff complained of back pain, she rated the pain's intensity "one"

or "two" on a 10-point scale (Tr. 174). Dr. Patel agreed with Dr. Qadir's observation that

Plaintiff's gait was normal, and noted that Plaintiff walked without an ambulatory aid (Tr. 175).

He believed Plaintiff's functional capacity for walking was "practically unlimited" (Tr. 175). Dr.

Patel further noted that Plaintiff was able to get up from a chair and go to the examination table

without assistance (Tr. 176). He noted no paravertebral spasm, no muscle wasting, and no

deformity of the spine (Tr. 176). Plaintiff could walk well on her heels and toes, squat, and

completely arise from a squatting position (Tr. 176). Straight leg raising test was negative (Tr.

-4-

176).  Dr. Patel found that Plaintiff could sit, stand, bend, stoop, carry, push, pull, and perform

other manipulative and postural activities (Tr. 179).

Dr. Raja Lewis treated Plaintiff from March 2006 through May 2008 (Tr. 204-309).  A

physical examination report from March 2006 indicated Plaintiff's joints were normal (Tr. 298).

Plaintiff's neurological examination that same day was also normal (Tr. 298); her hand grip

strength and pinch strength were normal bilaterally, and gross and fine dexterity were intact

bilaterally (Tr. 176).  Range of motion testing revealed Plaintiff had full range of motion in all

joints (Tr. 177-78).  A radiology study conducted in July 2007 indicated rotoscoliosis of

Plaintiff's lumbar spine and degenerative arthritis of the lumbosacral spine (Tr. 303).

Dr. Lewis authored a report in May 2008, in which she indicated diagnoses of

gastroesophageal reflux disease (GERD), hypertension, elevated lipids, fatty liver, degenerative

joint disease (DJD) of the back, and arthritis (Tr. 204).  Dr. Lewis noted that Plaintiff reported

back pain and pain "all over the body," had to lie down during the day, and could not travel by

bus or car on a daily basis (Tr. 204-05).  The report indicated treatment of Plaintiff's impairments

with medication but no other treatment (Tr. 204).

### 3.    Vocational Expert

The ALJ asked the vocational expert to consider a person with Plaintiff's vocational

profile who could lift up to 20 pounds occasionally and 10 pounds frequently; could stand and sit

for six hours in an eight-hour day; could occasionally climb, balance, stoop, kneel, crouch, and

crawl; and who was limited to occasional exposure to extreme cold (Tr. 374).  The vocational

expert testified that such a person could not perform Plaintiff's past work but could perform such

light unskilled occupations as small products assembler (12,500 jobs in southeast Michigan) and

hand packager (15,000 jobs in southeast Michigan) (Tr. 374-75).

C.    *Plaintiff's Claims of Error*

Plaintiff raises two arguments[2] on appeal:  (1) that the ALJ's disability analysis was "flawed" because Medical-Vocational Rule 201.09 would mandate a finding of disability "even if [she] retained the residual functional capacity, [sic] for sedentary work" (Pl. Br. at 2); and (2) that the ALJ relied too heavily on non-examining medical sources and should have given greater weight to the opinions of Drs. Lewis and Mansour-Habib, Plaintiff's treating physicians (Pl. Br. at 2-4).

III.    DISCUSSION

A.    *Standard of Review*

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *See Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *See Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact

---

        [2]  Any other objections to the ALJ's decision have been waived, as Plaintiff did not raise them in her motion for summary judgment.  *See Brainard v. Secretary of Health and Human Serv's.*, 889 F.2d 679, 681 (6th Cir. 1989).

unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may...consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *See Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *See Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

### B.      Governing Law

The "[c]laimant bears the burden of proving her entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq.*)

and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq*.).

Title II benefits are available to qualifying wage earners who become disabled prior to the

expiration of their insured status; Title XVI benefits are available to poverty stricken adults and

children who become disabled.  F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984).

While the two programs have different eligibility requirements, "DIB and SSI are available only

for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by reason of
> any medically determinable physical or mental impairment which
> can be expected to result in death or which has lasted or can be
> expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the

application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial
> gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or
> combination of impairments, that "significantly limits...physical or
> mental ability to do basic work activities," benefits are denied
> without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful
> activity, has a severe impairment that is expected to last for at least
> twelve months, and the severe impairment meets or equals one of
> the impairments listed in the regulations, the claimant is
> conclusively presumed to be disabled regardless of age, education
> or work experience.
>
> Step Four:  If the claimant is able to perform his or her past
> relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past
> relevant work, if other work exists in the national economy that the

> claimant can perform, in view of his or her age, education, and
> work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§

404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding

at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

   "Through step four, the claimant bears the burden of proving the existence and severity of

limitations caused by her impairments and the fact that she is precluded from performing her past

relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the

analysis reaches the fifth step without a finding that the claimant is not disabled, the burden

transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir.

2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant

numbers exist in the national economy that [claimant] could perform given [his] RFC and

considering relevant vocational factors."  *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v)

and (g).

   ### C.   *Analysis and Conclusions*

   As noted above, Plaintiff raises two arguments on appeal:  (1) that the ALJ's disability

analysis was "flawed" because Medical-Vocational Rule 201.09 would mandate a finding of

disability "even if [she] retained the residual functional capacity, [sic] for sedentary work" (Pl.

Br. at 2); and (2) that the ALJ relied too heavily on non-examining medical sources and should

have given greater weight to the opinions of Drs. Lewis and Mansour-Habib, Plaintiff's treating

physicians (Pl. Br. at 2-4).

   Plaintiff's first argument in not well-taken.  The ALJ determined that Plaintiff retained

the ability to perform a range of light work, not sedentary work.  Thus, the ALJ did not err in

failing to find disability through the application of Medical-Vocational Rule 201.09.  The issue

then becomes whether the ALJ correctly determined that Plaintiff could perform light work, which leads into Plaintiff's second argument.

Plaintiff next argues that the ALJ failed to give her treating physicians – specifically Drs. Lewis and Mansour-Habib – controlling weight and that the ALJ erred in rejecting the opinions of these doctors (Pl. Br. at 2-4).[3]  Defendant responds that neither of these doctors offered an opinion of Plaintiff's functional abilities.  Defendant is correct.  The issue of whether Plaintiff is disabled within the meaning of the Social Security Act is reserved to the Commissioner.  *See* 20 C.F.R. § 404.1527(e); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); *see also Gaskin v. Comm'r of Soc. Sec.*, 280 F. App'x 472, 474 (6th Cir. 2008). "Generally, the opinions of treating physicians are given substantial, if not controlling deference." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see Cox v. Comm'r of Soc. Sec.*, 295 F. App'x 27, 35 (6th Cir. 2008) ("This court generally defers to an ALJ's decision to give more weight to the opinion of one physician than another, where, as here, the ALJ's opinion is supported by evidence that the rejected opinion is inconsistent with the other medical evidence in the record.").  The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation."

_____

[3]  The ALJ noted that Dr. Qadir, who conducted the psychological consultative examination, opined that Plaintiff was not able to work due to pain or able manage her own benefits (Tr. 23 citing Tr. 172).  The ALJ did not give this opinion significant weight because it was largely based on Plaintiff's self-reports of symptoms and pain, because Dr. Qadir did not perform any physical testing as part of his examination, and because Dr. Qadir's assessment of Plaintiff's physical symptoms was outside his field of  expertise (Tr. 23).  In any event, Plaintiff does not argue on appeal that the ALJ should have adopted Dr. Qadir's opinion, and so any argument that the ALJ erred by failing to do so is waived.  *See Brainard v. Secretary of Health and Human Serv's*., 889 F.2d 679, 681 (6th Cir. 1989).

-11-

*Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *see also Kidd v. Comm'r of Soc. Sec.*, 283 F. App'x 336, 340 (6th Cir. 2008).  An opinion that is based on Plaintiff's reporting of her symptoms is not entitled to controlling weight.  *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876-77 (6th Cir. 2007).

Neither Dr. Lewis nor Dr. Mansour-Habib indicated how much Plaintiff could lift; how long she could sit, stand, or walk; and whether Plaintiff had any postural or environmental restrictions.  Dr. Lewis did indicate in a form that Plaintiff needed to lie down during the day and could not travel by car or bus on a daily basis (Tr. 204-05), however, this statement does not appear to be backed up by objective medical evidence.  To the contrary, the medical evidence in the record provides good reason for the ALJ to discount Dr. Lewis's opinions.  Specifically, the radiological studies of Plaintiff's spine, Plaintiff's observed ability to walk and squat without any difficulty, her normal neurological examinations, intact sensation and reflexes, and her daily activities – which included leaving home to shop, visit friends, and attend church – undermined the limitations that Dr. Lewis noted.

Additionally, the ALJ correctly took note of the conservative nature of Plaintiff's course of treatment.  The ALJ noted that Plaintiff's doctors treated her back pain with medication only; Plaintiff's doctors did not recommend physical therapy or more invasive procedures like pain injections or surgery (Tr. 22).  Plaintiff testified that she took Motrin for her arthritis (Tr. 364) and that her other medications were for high blood pressure and high cholesterol (*Id.*).  Simply put, the administrative record supports the ALJ's finding that Plaintiff's testimony regarding her limitations was not entirely credible.  The objective medical evidence shows that on the occasions that Plaintiff sought treatment, her symptoms were managed with a conservative

-12-

treatment regime.  Such conservative treatment supports the determination that Plaintiff retained

sufficient functional capacity to work.  *See Ashworth v. Sullivan*, No. 91-5699, 1991 WL 278961

at *7 (6th Cir. Dec. 30, 1991).

Additionally, while Plaintiff points out that she saw Dr. Lewis over 30 times (Pl. Br. at

3), none of the records documenting these visits contains any mention of treatment of Plaintiff's

arthritis beyond prescribing medicine, and none documents the severity of Plaintiff's symptoms

or mentions any functional limitations resulting from them.  In fact, these records largely

document Plaintiff's fatty liver, hypertension, and elevated cholesterol (Tr. 204-309).  The ALJ

did not find these conditions to be "severe impairments," and Plaintiff does not argue on appeal

that the ALJ made any error at step two of the sequential analysis.

In sum, after review of the relevant record, I conclude that the decision of the ALJ, which

ultimately became the final decision of the Commissioner, is within that "zone of choice within

which decision makers may go either way without interference from the courts," *Felisky v.

Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994), as the decision is supported by substantial evidence.

## III.    RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's motion for summary

judgment be **DENIED**, that Defendant's motion for summary judgment be **GRANTED** and that

the findings and conclusions of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as

provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific

objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140

(1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United*

*States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Mark A. Randon
MARK A. RANDON
UNITED STATES MAGISTRATE JUDGE

Dated: July 19, 2011

### Certificate of Service

*I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, July 19, 2011, by electronic and/or ordinary mail.*

*s/Barbara M. Radke*
*Judicial Assistant*